## JONES, Estate of, In Re.

Ohio Appeals, Third District, Van Wert County.

No. 165.   Decided December 9, 1943.

J. F. Beam, Van Wert, for appellant.
C. E. Drury, Van Wert, for appellee.

## OPINION

By JACKSON, J.

The decedent, Thomas T. Jones, died testate on the 22nd day of July, 1942, leaving Chloe Barnes Jones as his surviving spouse, and Walter O. Jones, David A. Jones and Ann Orpha Shuman as heirs of his body by a former marriage.

The inventory and appraisement of the testator, as filed in the Probate Court of Van Wert county, showed personal goods and chattels to the amount of $1002.00, and moneys belonging to the decedent in the sum of $273.82, making a total of $1275.82. The inventory recites that no property was exempted from the administration for the surviving spouse nor any allowance for a year's support made to her, by reason of a contract signed by the testator and his surviving spouse on the 17th day of September, 1938.

To this inventory and apraisement the said Chloe Barnes Jones filed exceptions as follows:

1. Said decedent died seized in fee simple of eighty acres of real estate situated in the township of Washington, County of Van Wert and State of Ohio, and that said real estate is omitted from the inventory.

2. The inventory fails to set off to this surviving spouse any exemptions or year's allowance.

3. Chloe Barnes Jones the surviving spouse asserts that the purported antenuptial agreement made a part of said inventory is null and void and unenforceable.

Upon the hearing of the exceptions the Probate Court found that the antenuptial agreement was void, unenforceable and of no effect; and that the testator Thomas T. Jones was the owner in fee simple of the lands which he possessed at the time of his death; and it was ordered that the antenuptial agreement be set aside and held for naught, and the administrator with the will annexed was ordered to amend the inventory and appraisement to include such real estate and to require the appraisers to set off to the surviving spouse, her statutory exemptions and year's allowance.

To these orders of the Probate Court the administrator with the will annexed and the next of kin perfected an appeal on questions of law.

The assignments of error are as follows:

1. The court erred in sustaining the exceptions to the inventory.

2. The court erred in adjudging said antenuptial agreement unenforceable and of no effect.

3. The court erred in adjudging said deed to convey to the decedent Thomas T. Jones an estate in fee simple.

4. Other errors appearing on the record.

While there are four assignments of error set forth, the arguments and issues resolve themselves as to assignments of error numbers 2 and 3 which embrace all other assignments of error.

The case was submitted on an agreed statement of facts which is as follows:

Thomas T. Jones died July 22, 1942, leaving the exceptor, Chloe Barnes Jones, his surviving spouse. The testator and surviving spouse were married August 22, 1936. At the time of the marriage and at the time of the death of the testator he had an interest in certain real estate in his possession by virtue of a deed marked Exhibit "A". Prior to the marriage on August 22, 1936, the testator and the said Chloe Barnes Jones entered into an oral agreement the terms of which are embodied in a paper writing signed September 17, 1938, which writing is attached and marked Exhibit "B". At the time said oral agreement was made and at the time of said marriage and at the time of the signing of the paper writing by Chloe Barnes Jones, the said Thomas T. Jones, the testator, represented to said Chloe Barnes Jones that his then legal interest in the real estate described in Exhibit "A" was the use and possession of said premises for his lifetime only and that his interest was not such that she could have at his death any right as surviving spouse therein. At the time said oral agreement was made and at the time of the marriage and at the time of the signing of said paper writing, the said Chloe Barnes Jones relied on said representations and made such oral agreement and signed such paper writing believing that said Thomas T. Jones had an interest in said real estate in which she could not at his death have any interest as surviving spouse.

The deed referred to as Exhibit "A" is a warranty deed from Edward T. Jones and Jane Jones, husband and wife, to their son Thomas T. Jones, the testator in question, for the consideration of love and affection and one thousand dollars for the eighty acres of real estate located in the township of Washington, county of Van Wert and State of Ohio.

In the granting clause, the conveyance is made to "Thomas T. Jones and heirs of his body."

In the habendum clause, the deed recites that it is for the use of "Thomas T. Jones, his heirs and assigns forever."

In the warranty clause, it is recited "Thomas T. Jones and his heirs of his body."

In the granting and warranty clauses, the above quoted words are typewritten, and in the habendum clause the words "Thomas T. Jones" and the word "his" are typewritten, and the words "heirs and assigns forever" are printed.

It is a well-known rule of construction that typewritten phrases are given effect over printed phrases if there is any inconsistency between them.

9 O Jur, Sec. 200, Contracts, page 429.

16 American Jurisprudence, Paragraph 178, Deeds, p. 1043

8 Ruling Case Law, Section 98, Deeds, p. 1043.

What, then, is the meaning and effect, in Ohio, of a granting clause which recites that the premises in question are conveyed to "Thomas T. Jones and heirs of his body"?

The deed is dated January 15, 1897, and under the decisions in Ohio, Thomas T. Jones, by virtue of the deed in question, became the first donee in tail of the estate and held an estate in fee tail, which left Thomas T. Jones, as the first tenant in tail in full enjoyment of all the rights and subject to all the disabilities incident to that species of estates, and upon his decease the right of entry accrued to the issue of his body and their estate immediately became an absolute estate in fee simple.

Pollock v Speidel, 27 Oh St., 87-95.

Dix v Benzler, 32 Ohio Law Abstract, 599.

Since an estate in fee tail is one of inheritance, the real estate in question should have been included in the inventory.

Sec. 10502-1 GC.

16 O Jur, Paragraph 22, Estates, p. 405.

16 O Jur, paragraph 27, Estates, p. 410.

16 O Jur, paragraph 34, p. 415.

Harkness v Corning, 24 Oh St., 416.

Diebel's Ohio Probate Law, 433.

The State of Ohio, by virtue of §10512-8 GC, limits all estates given in tail by deed or will in lands or tenements lying within the state to be an absolute estate in fee simple to the issue of the first donee in tail.

In any event, whether the estate is for life or in tail and if there were no surviving spouse, the heirs of Thomas T. Jones, being the issue of the first donee in tail, would receive and possess a fee simple estate.

There is considerable difference between a life estate and an estate in tail.

The incidents of a tenancy in tail were chiefly that he might commit waste; the wife had dower therein; the husband had curtesy; such an estate might be barred or destroyed

by a fine, by common recovery or by lineal warranty descending with assets to the heirs. A life estate has none of these incidents' and although a life estate may be of identically the same endurance as the particular estate held by the first donee in tail, yet the remainder does not pass to those who take it as an estate of inheritance from and through the life tenant but the remainderman takes from the grantor or devisor directly as an estate by purchase from the death of the life tenant. The fee is vested in the remainderman and not in the life tenant, whereas the fee in an estate tail is vested by the grant or devise in the first taker, the first donee in tail, and passes from him at death by operation of law to the immediate heirs of his body. In case of a life estate the life tenant can not commit waste without forfeiting his estate; the wife has no dower in such an estate; the husband has no curtesy therein; and the estate cannot be barred by fine or common recovery.

**16 O Jur paragraph 44, Estates, p. 425.** Even some learned judges have, by inept expression, intermingled an estate for life and an estate in fee tail as being synonymous. In **Pollock v. Speidel, 17 Oh St., 447,** the judge said: "The statute recognizes the first donee in tail as holding an estate for life only as tenant in tail." The idea intended to be expressed was that the donee, holding only as tenant in tail, could not convey an estate that would endure beyond his own life.

The rule in Shelley's case is not applicable to the case ■ at bar. This rule has been abrogated as to wills, since 1840.

It was abolished as to all cases, including deeds, August 21, 1941.

**Sec 10504-70, GC.**

The rule in Shelley's case is an established rule of property and not a rule of construction.

**36 O Jur, paragraph 6, Shelley's case, p. 603.**

This rule has been productive of a great amount of controversial disquisition and resulting in a wilderness of decisions, and the attitude of the modern lawyer toward the rule is generally one of marked hostility, yet if we are to have the free alienation of property the rule should obtain, or some substitute modifications thereof by legislative enactment, which has been accomplished.

The rule, as approved, is as follows:

"When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an

interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

**36 O. Jur. paragraph 2, Shelley's case, page 599.**

It has also been stated as follows:

"When the ancestor, by any gift or conveyance taketh an estate of freehold and in the same gift or conveyance an estate is limited, either mediately or immediately to his heirs in fee or in tail, the word "heirs" is a word of limitation of the estate and not a word of purchase."

1 Coke, 104.

Some confusion has arisen by reason of a failure to define what is meant by "limitation" and by "purchase." As used in the definition of the rule, the word "purchase" means every mode of acquisition of an estate known to the law except that by which an heir, on the death of his ancestor becomes substituted in his place as owner by operation of law. The word "limitation" is one that defines the boundary in describing the quality or extent of the estate conveyed, and if the words in the conveyance are such as not to be words of purchase but of limitation, then the ancestor takes the estate in fee simple.

The contract known as Exhibit "B" recites, among other things, that it was made and executed on the 17th day of September, 1938, but that in fact it was reducing to writing on said date an oral agreement made on or about the 20th day of August, 1936, by and between Thomas T. Jones and Chloe E. Barnes.

On August 20, 1936, the parties were unmarried, and on the 17th day of September, 1938, the parties had been married for over a period of two years. Both parties were the owners of property and each had children by a former marriage. Both disclaimed any right or interest in the property of the other, including any and all allowances provided by law, or any distributive share in either the real or personal property of either of the other parties, and that in the event either desired to sell or convey any or all real estate owned by such party, the other party would execute a proper release of his or her dower interest without further payment or consideration and that all real estate and personal property of which either party died as the owner would descend

to his or her heirs at law or could be devised by him or her by last will and testament free and clear from any claim, interest or right of the other whatsoever, including all statutory allowances and distributive share belonging to the other party as his or her relict under the law and that either party would execute all necessary and proper instruments for release without payment or further consideration in order to carry out his or her agreement so herein mentioned.

It was further provided in said contract: "It was then and there further mutually agreed between said parties that nothing in their agreement should release him from his duties as her husband to support her his wife, and that their agreement as to their property should apply to property of all kinds then and thereafter owned by each respectively."

There is no claim but that the written instrument executed September 17, 1938, represented the actual agreement of the parties entered into only a few days before the marriage. The only question involved is whether the representations of the testator Thomas T. Jones that he was possessed of a life estate in the real estate in question were such as to bear the earmarks of fraud or that the surviving spouse was deceived thereby and relied thereon to her own disadvantage.

According to the stipulation of facts, the decedent Thomas T. Jones represented that his only legal interest in the real estate was the use and possession of said premises for his lifetime only and that his interest was not such that she could have at his death any right as surviving spouse therein; that Chloe Barnes Jones relied on these representations that Thomas T. Jones had only such interest in such real estate that she could not at his death have any interest as surviving spouse. Nothing is contained in the stipulation of facts showing the financial worth or ownership of either of the parties, except the real estate in question.

It appears that the testator acted in good faith and under an honest belief that he held only a life estate, and his representations were not the result of improper motives on his part.

Amick v Woodworth, 58 Oh St. 86-100.

Speckman v Speckman, 15 Oh App. 283-287.

The question as to the extent of the estate that vested in Thomas T. Jones under the deed is a question of law.

His representations that his estate was a life estate, when as a matter of law it was an estate in fee tail, was a mistake of law and not a misrepresentation of a fact. Being a mistake of law, it does not constitute grounds for setting aside the contract entered into between the parties.

**19 O Jur, Section 128, Fraud and Deceit, page 416.**

If such statement should be considered as a misrepresentation of fact, such misrepresentation did not relate to a material fact and was not material, as it appears from the contract that the whole purpose and intent of the parties was that neither, by virtue of their marriage, should have any right, title or interest in or to the statutory allowances and distributive share in the real or personal property of the other irrespective of what it might consist and that the property of each would descend to his or her heirs at law and could be devised by each by last will and testament free and clear from any claim, interest or right whatsoever of the other, including all statutory allowances and distributive share belonging to each as the relict of the other, which precludes any conclusion that a possible right of dower in either party was material to the other party under the contract.

The true intent of the parties is readily ascertained from the following paragraph of the agreement: "It was then and there further mutually agreed between said parties that nothing in their agreement should release him from his duties as her husband to support her his wife, and that their agreement as to their property should apply to property of all kinds then and thereafter owned by each respectively."

It is a simple contract between two elderly people, Thomas T. Jones being of the approximate age of sixty years and Chloe Barnes being of the age of fifty-one years in August, 1936, both having property which was acquired during a previous marital status, and both having children by a former marriage, to protect their respective heirs in the descent and distribution of their property, and the true intent and purpose of said contract should be carried out if said contract is not contrary to the laws of Ohio and void for that reason.

**Sec 8621, GC,** provides in substance that no action shall be brought to charge a person upon an agreement made upon consideration of marriage or upon a contract or sale of lands, tenements, or hereditaments, or interest in, or concerning them, nor upon an agreement that is not to be performed within one year from the making thereof;

unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the parties to be charged therewith.

The written contract was signed September 27, 1938, embodying the terms and conditions of the verbal contract made and entered into on August 20, 1936, and being in writing and signed by the parties to be charged therewith conforms to the requirements of said Section, and the surviving spouse Chloe Barnes Jones was charged with the conditions embodied in said written contract, for the first time when the inventory and appraisement of the estate of Thomas T. Jones was filed in the Probate Court of Van Wert county, Ohio, on November 25, 1942.

It follows that the written contract is not void and of no effect, and is enforceable against her.

Heretofore we have indicated that the real estate should be included in the inventory, but only for the purpose of administration, other than the year's allowance and the other statutory allowances to and for the said Chloe Barnes Jones as the surviving spouse.

The judgment of the Court of Probate of Van Wert County, Ohio is reversed in sustaining the exceptions to the inventory other than the inclusion of the real estate in question in the inventory; in adjudging the antenuptial agreement unenforceable and of no effect; and in adjudging the deed to convey to the decedent Thomas T. Jones an estate in fee simple.

Exceptions allowed to both parties.

GUERNSEY, P. J., and MIDDLETON, J., concur.